JUDGE CASTEL

**07 CV 6673**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BETANIA ZARATE,

                Plaintiff

v.

D.L. RECOVERY CORP.; CARLOS ZAPATA;
UNKNOWN COLLECTOR 1; UNKNOWN
COLLECTOR 2; and UNKNOWN
COLLECTOR 3,

                Defendants

Civil Action No.

**COMPLAINT AND JURY DEMAND**



## PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages brought by an individual for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, which prohibits debt collectors from engaging in abusive, deceptive, or unfair practices.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has pendent jurisdiction of Ms. Zarate's state law claims pursuant to 28 U.S.C. § 1367.

3. Venue in this district is proper under 28 U.S.C. § 1391(b) because Defendants transact business here, and the conduct complained of occurred here.

**PARTIES**

4. Plaintiff Betania Zarate is an individual who resides at 485 West 187th Street, Apartment 2C, New York, NY 10033. Ms. Zarate is a "consumer" as defined by 15 U.S.C. § 1692a(3).

5. Defendant D.L. Recovery Corp. is a New York Corporation engaged in the business of debt collection with its principal place of business at 3924 East Tremont, Bronx, New York, 10465.

6. Defendant Carlos Zapata was the Chairman or Chief Executive Officer of D.L. Recovery Corp. at all times relevant to this action.

7. Defendants Unknown Collectors 1, 2, and 3 are natural persons employed by Defendant D.L. Recovery Corp. at all times relevant to this action.

8. Defendants are engaged in the business of collecting debts from consumers using the mail and the telephone. Defendants regularly collect consumer debts alleged to be due to another. Defendants are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

**FACTUAL ALLEGATIONS**

9. Plaintiff Betania Zarate is a hardworking, single mother who is struggling to raise two children on a low income. Ms. Zarate works in a beauty salon on the Upper East Side of Manhattan, where she currently earns $180 per week. She also attends school part-time, where she studies English. An immigrant from the Dominican Republic, Ms. Zarate primarily speaks Spanish.

10. In 2002, Ms. Zarate decided to purchase a computer for her children, who needed the computer to complete homework assignments and school projects. Ms. Zarate

purchased a computer on credit from Nuevo Mondo Sales and Financial, Inc., a company that markets high-priced computers to low-income Spanish speakers.

11. By the time Ms. Zarate finished paying off the computer two years later, it was out of date, and Ms. Zarate needed to replace it with a newer model. In November 2004, Ms. Zarate agreed to purchase a second computer on credit from Nuevo Mondo.

12. Ms. Zarate incurred this debt for personal, family, or household purposes.

13. Ms. Zarate's obligation to repay Nuevo Mondo constituted a "debt" as defined by 15 U.S.C. § 1692a(5).

14. Ms. Zarate made regular payments on the computer from November 2004 through April 2006.

15. In or about April 2006, Ms. Zarate lost her job and, consequently, experienced financial difficulties. Ms. Zarate had to focus on paying for basic necessities for her family, such as rent and food. In May 2006, she stopped making payments to Nuevo Mondo. At the time, she explained to Nuevo Mondo that she had lost her job and would be unable to make payments until she found a new job and her financial situation improved.

16. Sometime thereafter, Ms. Zarate's Nuevo Mondo account was placed with Defendant D.L. Recovery Corp. for collection.[1]

17. On or about the evening of July 26, 2006, Defendant Unknown Collector 1 telephoned Ms. Zarate's neighbor, Alma Jimenez. Collector 1 falsely identified himself

---

[1] Ms. Zarate disputes owing any money whatsoever to Nuevo Mondo. Nuevo Mondo sold Ms. Zarate a substandard computer at a grossly inflated price. Ms. Zarate's computer was damaged when delivered, and Nuevo Mondo refused to replace or repair it despite the fact that the computer was under warranty. Also, Nuevo Mondo sometimes "double dipped" into Ms. Zarate's bank account, taking more than one electronic payment in a single month. Thus Ms. Zarate believes she has already paid all that she owes to Nuevo Mondo.

to Ms. Jimenez as a New York City Marshal. Collector 1 told Ms. Jimenez that he was going to take all her furniture and sell it because Ms. Zarate owed money on her computer. Ms. Jimenez explained that she herself did not owe anything and asked him to leave her alone, but Collector 1 said that he had to come and take her things because he was just doing his job.

18. Ms. Jimenez believed Collector 1 and grew distressed over the idea that he would take her furniture. Ms. Jimenez telephoned her daughter, Belkis Romero, and told her that the Marshal was coming to take her property because Ms. Zarate had not paid for her computer.

19. Hours later, Collector 1 telephoned Ms. Jimenez again. This time he stated that he would be at Ms. Zarate's apartment within the hour to seize all her possessions because she owed money on her computer.

20. Ms. Jimenez immediately ran to Ms. Zarate's apartment, where Ms. Zarate's minor son, Noe Peña, was home alone. Ms. Jimenez told Noe that they needed to find his mother right away because the Marshal was coming to take all their things. Noe could not find his mother's phone number at work, and he became very frightened and upset and started to cry.

21. Ms. Jimenez ran to the apartment of another neighbor, Clarisa Felix. She screamed, "Hurry up and come down because the boy is alone and they are going to take everything!" Ms. Felix hurried to Ms. Zarate's apartment, where she found Noe in tears.

22. While Ms. Felix was at Ms. Zarate's apartment, Collector 1 called. Ms. Felix answered the phone. Collector 1 falsely identified himself to Ms. Felix as an "Officer" and a New York City Marshal, and he asked to speak to Ms. Zarate. Ms. Felix

explained that Ms. Zarate was not at home, and that she was there only to watch her minor child. Collector 1 disclosed to Ms. Felix that Ms. Zarate owed money for her computer. He threatened to come to Ms. Zarate's apartment in one hour to "take everything." He also warned that he would "take the car" and "call Immigration."

23. Meanwhile, Belkis Romero had telephoned Ms. Zarate's sister, who lives in the Dominican Republic with her mother, an elderly woman with high blood pressure. Ms. Zarate's eleven-year old daughter, who normally lives with Ms. Zarate, happened to be visiting her grandmother and was also in the house at the time. Belkis Romero told Ms. Zarate's sister that Ms. Zarate was in big trouble with the police, her house was full of policemen, and she could not be found. Upon hearing this news, Ms. Zarate's mother fainted, and Ms. Zarate's daughter had an asthma attack. Both had to be taken to the Emergency Room.

24. Ms. Zarate's sister did not know how to reach her at work, so she gave Belkis Romero the telephone number of Israel Guillen, a friend of Ms. Zarate's who also happens to be a New York City Police Officer.

25. Belkis Romero contacted Mr. Guillen and told him the same story.

26. Mr. Guillen telephoned Ms. Zarate at work. He told Ms. Zarate that her house was full of police officers who had come to arrest her. He advised her to go home and turn herself in.

27. Ms. Zarate telephoned her house and spoke to Ms. Felix. She could hear her son crying in the background. Ms. Felix explained that there were no police officers at the house, but that the Marshal was coming to take everything away because she owed money on her computer.

28.    Shortly thereafter, Collector 1 telephoned Ms. Zarate at work.

29.    Receptionist Rosana Kabashi answered the phone. Collector 1 falsely identified himself to Ms. Kabashi as a New York City Marshal and asked to speak to Ms. Zarate. Ms. Kabashi replied that Ms. Zarate was with a client and could not be interrupted. Collector 1 responded, "Ma'am, do you know what it means to be a City Marshal?" and insisted on speaking to Ms. Zarate immediately. Ms. Kabashi interrupted Ms. Zarate, telling her in front of her client, "The Marshal is on the phone for you. Didn't you pay your rent?"

30.    Ms. Zarate then spoke to Collector 1, who once again falsely identified himself as a New York City Marshal.

31.    Collector 1 stated that he was calling about the computer. He told Ms. Zarate that a judge had already fined her $3500 because she didn't show up in court. He accused Ms. Zarate of taking the court's notice of the fine and tearing it up and throwing it in the garbage. He also stated that if Ms. Zarate didn't pay $3500 by 7:00 PM that night, he would come to her house and take all her furniture and sell it at auction. All of these statements were lies.

32.    Collector 1 menaced Ms. Zarate, stating "I know where you live," "I know where you work," and "I have your new address, and I'm going to come over there."

33.    Collector 1 told Ms. Zarate that she had to speak to "the lawyer" if she wanted to stop him from seizing her property. He gave Ms. Zarate a telephone number for the "lawyer," 718-823-8000.

34.    Collector 1 called Ms. Zarate's workplace a second time and spoke to Ms. Zarate's supervisor, the owner of the beauty salon. When the owner replied that Ms.

Zarate was busy and could not come to the phone, Collector 1 asserted that he needed to speak with her because he was the Marshal, and he was going to arrest Ms. Zarate and take her things.

35. Meanwhile, Ms. Zarate called the "lawyer." Unknown Collector 2 answered the phone and falsely identified herself as "Abogada Martinez" ("Attorney Martinez"). Collector 2 said that she and the Marshal would take everything from the Ms. Zarate's home unless she paid them $3500 that night.

36. When Ms. Zarate asked to make a payment plan, Collector 2 laughed at her and said that she was already on her way to Ms. Zarate's house. Collector 2 said, "The judge already fined you $3500, and you have to come up with the money tonight." This was a lie.

37. Collector 2 threatened to repossess Ms. Zarate's car, an old black Honda. Collector 2 told Ms. Zarate that she had already spoken with a representative from Honda Financial, which held Ms. Zarate's auto loan, and that the representative had given her all of Ms. Zarate's financial information and permission to take the car. This was another lie.

38. Collector 2 threatened to "send Immigration to the house" because "everyone there is illegal." Collector 2 also told the Ms. Zarate that she would get into "a lot of trouble" if she were arrested and the police found out she was undocumented.

39. When the Ms. Zarate responded that she was a legal resident of the United States, Collector 2 hung up the phone.

40. Ms. Zarate cried and felt distraught. Ms. Zarate genuinely feared that she would be arrested and all her furniture and her car would be taken and sold.

41. Ms. Zarate asked her boss for an advance so she could pay the $3500, but her boss refused to loan her that much money. Another person at the salon suggested that they take up a collection to help Ms. Zarate pay her debt.

42. Ms. Zarate felt humiliated that her personal business had been revealed to her coworkers, supervisors, and customers. Ms. Zarate couldn't finish her work because she was too upset. Another employee had to complete her work for her.

43. Ms. Zarate was so concerned about losing her car that she parked it in a private garage near the salon to hide it from the debt collectors. Ms. Zarate took the bus home that night.

44. Ms. Zarate was still crying when she arrived home to find her son still extremely upset. Ms. Zarate's neighbor, Ms. Felix, tried to comfort them.

45. Ms. Zarate did not sleep that night.

46. The next morning Ms. Zarate did not go into work because she was too embarrassed and frightened. She telephoned Collector 2 again. Collector 2 threatened to come to her house at 11 AM to take her furniture. When Ms. Zarate begged for a payment plan, Collector 2 said, "I don't want it." She added, "The judge already signed an order that all of your things will be auctioned off." She sneered, "I can't talk to anybody who doesn't have money."

47. That morning a third individual, Unknown Collector 3, telephoned Ms. Jimenez. Collector 3 falsely identified himself to Ms. Jimenez as José, a New York City Police Officer with the 43rd Precinct. Collector 3 stated that he was calling to advise her that he was coming in one hour to take Ms. Zarate's furniture. When Ms. Jimenez

protested, "I have nothing to do with this," Collector 3 replied, "This is how we work, and this is what we do."

48. In addition, that morning Collector 1 telephoned Ms. Jimenez to discuss Ms. Zarate's debt. He also telephoned Ms. Zarate's work multiple times, even though Ms. Kabashi told him that the Ms. Zarate did not come to work that day. However, he did not telephone Ms. Zarate.

49. Ms. Zarate stayed home all day waiting for the Marshal, but he never came.

50. That evening, Ms. Zarate called the NYC Financial Justice Hotline and spoke to the undersigned, who informed her that she had not spoken to a Marshal or a lawyer, but to unscrupulous debt collectors who had broken the law and violated her rights.

51. Ms. Zarate did not have the courage to remove her car from the parking garage until July 29, three days later. She spent $60 on parking fees to hide her car from Defendants.

52. Even after removing her car from the garage, Ms. Zarate was afraid to park the car near her home. She decided to look for a safer parking spot near her work. Ms. Zarate felt extremely nervous and had difficulty concentrating on her driving because she was constantly looking over her shoulder and in the mirror to see if anyone was following her. That night, Ms. Zarate got into an accident when another driver sideswiped her car. Ms. Zarate felt that the accident occurred because she could not concentrate properly on her driving, and it would not have occurred but for the harassment she experienced from Defendants.

53. The next week, Ms. Zarate received in the mail a postcard-sized note in a small envelope. The note directs her to call 718-823-8000 and ask for file number 170711. That telephone number – the same offered by Collectors 1 and 2 when they posed as the Marshal and the lawyer – matches a number belonging to Defendant D.L. Recovery Corp.

54. The note arrived in an envelope with a printed return address of 3924 East Tremont, Lower Level, Throgs Neck, NY 10465. Defendant D.L. Recovery Corp. conducts business from that address.

55. The note does not contain any of the information required by § 1692(g) of the FDCPA. Specifically, the note fails to state: (a) the amount of the debt; (b) the name of the creditor to which the debt is owed; (c) that unless the consumer, within 30 days after receipt of the notice, fails to dispute the validity of the debt, or any portion thereof, the debt will be assumed valid by the debt collector; (d) that if the consumer notifies the debt collector in writing within the thirty day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (e) that upon the consumer's written request within the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

56. Defendants' actions caused great injury to Ms. Zarate. After the incident, Ms. Zarate had difficulty sleeping. She lost her desire to cook for her family. She felt unusually nervous all the time.

57.  Even today, Ms. Zarate continues to feel extremely embarrassed and humiliated because of Defendants' actions. Ms. Zarate knows that her coworkers and neighbors know all about her debt problems, and she worries that they look down on her. At work, she feels embarrassed to look her coworkers in the eye. She also loses concentration easily at work, which she never used to do, and the quality of her work has suffered. Ms. Zarate has even looked for other jobs, but so far she has been unable to find one.

## FIRST CLAIM FOR RELIEF
### (Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*)

58.  Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1-51 above.

59.  Defendants violated the Fair Debt Collection Practices Act. Defendants' violations include, but are not limited to, the following:

   a. Defendants violated 15 U.S.C. § 1692b by contacting third parties, Ms. Zarate's neighbors and coworkers, without her prior consent.

   b. Defendants violated 15 U.S.C. § 1692d by broadcasting Ms. Zarate's debt to numerous third parties and threatening to have her arrested and/or deported.

   c. Defendants violated 15 U.S.C. § 1692d(6) by falsely identifying themselves as, respectively, a New York City Marshal, a lawyer, and a New York City Police Officer and by failing to disclose their true identities.

   d. Defendants violated 15 U.S.C. § 1692e by making numerous false, deceptive and misleading statements to collect a debt.

e. Defendants violated 15 U.S.C. § 1692e(1) by falsely claiming to be a New York City Marshal.

f. Defendants violated 15 U.S.C. § 1692e(2) by falsely claiming that Ms. Zarate owes $3500 and that a court had already issued a judgment against her when, in fact, no lawsuit has been filed.

g. Defendants violated 15 U.S.C. § 1692e(3) by falsely claiming to be an attorney.

h. Defendants violated 15 U.S.C. § 1692e(4) by falsely representing that Ms. Zarate would be arrested or imprisoned, that Ms. Zarate's car would be repossessed, and that the entire contents of Ms. Zarate's apartment would be seized.

i. Defendants violated 15 U.S.C. § 1692e(5) by threatening to take legal action that could not be taken and that they did not intend to take, e.g., having Ms. Zarate arrested and deported, repossessing her car, and seizing all her possessions.

j. Defendants violated 15 U.S.C. § 1692e(7) by telling Ms. Zarate's supervisor that Ms. Zarate would be arrested in order to disgrace her.

k. Defendants violated 15 U.S.C. § 1692e(10) by making false representations and using deceptive means to collect a debt.

l. Defendants violated 15 U.S.C. § 1692e(11) by failing to disclose in their initial communication with Ms. Zarate that they were debt collectors attempting to collect a debt, and any information obtained would be used for that purpose.

m. Defendants violated 15 U.S.C. § 1692f by using numerous unfair and unconscionable means to collect a debt.

n. Defendants violated 15 U.S.C. § 1692f(1) by attempting to collect $3500 from Ms. Zarate, far more than she actually owed.

o. Defendants violated 15 U.S.C. § 1692f(6) by threatening to take property that they had no right or intent to take, much, if not all, of which was also exempt from debt collection.

p. Defendants violated 15 U.S.C. § 1692g by sending Ms. Zarate a written notice that:

   i. Failed to state the amount of the debt;

   ii. Failed to state the name of the creditor to which the debt is owed;

   iii. Failed to state that unless the consumer, within 30 days after receipt of the notice, fails to dispute the validity of the debt, or any portion thereof, the debt will be assumed valid by the debt collector;

   iv. Failed to state that if the consumer notifies the debt collector in writing within the thirty day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and,

      v. Failed to state that upon the consumer's written request within the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

60. As a result of the above violations of the FDCPA, Defendants are liable to Ms. Zarate for a declaratory judgment that Defendants' conduct violated the FDCPA, and for Ms. Zarate's actual damages, statutory damages, and costs and attorney's fees.

## SECOND CLAIM FOR RELIEF
### (New York General Business Law § 349)

61. Plaintiff repeats and re-alleges the foregoing paragraphs.

62. As enumerated above in paragraph 58, Defendants violated § 349 of the New York General Business Law by using deceptive acts and practices in the conduct of their business.

63. Defendants committed the above-described acts willfully and/or knowingly.

64. As a result of these violations of § 349 of the General Business Law, Ms. Zarate is entitled to an injunction barring Defendants from engaging in deceptive acts and practices, and to recover for treble her actual damages, costs and attorney's fees.

## THIRD CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

65. Plaintiff repeats and re-alleges the foregoing paragraphs.

66. Defendants' acts as described above were committed intentionally and/or recklessly.

67. Defendants' conduct as described above was extreme and outrageous.

68. As a result of Defendants' extreme and outrageous conduct, Ms. Zarate suffered severe emotional distress.

69. Defendant intentionally inflicted emotional distress upon Ms. Zarate. As a result, Defendant is liable to Ms. Zarate for actual and punitive damages in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
(Common Law Fraud)

70. Plaintiff repeats and re-alleges the foregoing paragraphs.

71. As enumerated above in Paragraph 58, Defendants made numerous false statements to Ms. Zarate in order to induce her to pay them $3500, which was more than she possibly could have owed Nuevo Mondo for the computer.

72. Defendants made these false statements knowingly.

73. As a result of Defendants' false statements, Ms. Zarate suffered emotional injury and pecuniary harm in the form of lost wages and parking fees.

74. Defendant is liable to Ms. Zarate for actual and punitive damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Ms. Zarate respectfully requests that this Court:

1. Enter a declaratory judgment that Defendants' acts and practices violated the FDCPA;

2. Enjoin Defendants from committing similar violations in the future;

3. Award actual damages to Ms. Zarate;

4. Award statutory damages to Ms. Zarate;

5.  Award reasonable attorney's fees to Ms. Zarate;

6.  Award costs to Ms. Zarate;

7.  Award punitive damages to Ms. Zarate; and,

8.  Award such other and further relief as may be just and proper.

**JURY TRIAL DEMANDED.**

Dated: July 24, 2007
New York, NY

Respectfully Submitted,

*/s/ Claudia Wilner*

Claudia Wilner (CW 1995)
Consumer Financial Justice Project
NEIGHBORHOOD ECONOMIC
DEVELOPMENT ADVOCACY
PROJECT (NEDAP)
73 Spring Street, Suite 506
New York, NY 10012
t:  212-680-5100

John C. Gray, Esq.
Edward Josephson, Of Counsel
SOUTH BROOKLYN LEGAL
SERVICES, INC.
105 Court Street
Brooklyn, NY 11201
t:  718-237-5500

ATTORNEYS FOR PLAINTIFF